Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Josh Goldman, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>V Shred, LLC,<br><br>*Defendant*. | Case No. 2:25-cv-06582-DSF-AJR<br><br>**FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Table of Contents


I. Summary of the case. 1

II. Parties. 2

III. Jurisdiction and Venue. 2

IV. Facts. 3

A. V Shred's deceptive sales. 3

B. Plaintiff was misled and harmed by Defendant's deceptive sales. 10

C. Defendant breached its contract and warranties with Mr. Goldman and the putative Class. 11

D. No adequate remedy at law. 11

V. Class Action Allegations. 12

VI. Claims. 14

Count 1: Violation of California's False Advertising Law 14

Count 2: Violation of California's Consumer Legal Remedies Act 15

Count 3: Violation of California's Unfair Competition Law 17

Count 4: Breach of Contract 19

Count 5: Breach of Express Warranty 20

Count 6: Quasi-Contract/Unjust Enrichment 21

Count 7: Negligent Misrepresentation 22

Count 8: Intentional Misrepresentation 23

VII. Relief. 24

## I. Summary of the case.

1. When a product is advertised as being on sale, this drives purchases. And there is nothing wrong with a legitimate sale. But some companies—like V Shred—take advantage of consumers with fake sales: deceptive sales that aren't really discounts off the true regular price. To protect consumers, the law prohibits such deceptive sales.

2. V Shred makes, markets, and sells online fitness programs. On its website, it advertises discounts off its regular prices. For example:




3. These seem like great deals. But the truth is that V Shred's discounts are always available. So V Shred tricks consumers into thinking they are getting a discount when they are really just paying the regular price.

4. California consumer, Josh Goldman, bought products from V Shred's website and was deceived by its fake sales. He brings this case to protect California consumers who purchased "discounted" V Shred products.

**II. Parties.**

5. Plaintiff Josh Goldman is domiciled in Los Angeles, CA.

6. The proposed Class includes citizens of California.

7. Defendant, V Shred, LLC is a Nevada limited liability company with its principal place of business in Las Vegas, NV. It is a citizen of Nevada. *See* 28 U.S.C. § 1332(d)(10) (in a class action, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized").

**III. Jurisdiction and Venue.**

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from Defendant.

9. The Court has personal jurisdiction over Defendant because Defendant sold its products to consumers in California, including to Plaintiff.

10. Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold its products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. V Shred's deceptive sales.

11. V Shred sells online fitness programs, diet programs, and supplements (the "Products") through its websites.[1] Its Products are exclusive to it (not made or originally retailed by others).

12. V Shred advertises sales on its homepage, and other pages on its websites, by showcasing product listings, along with a strikethrough regular price (the former price) and the supposedly steep discounted price, with the word "SALE" displayed in a red box. For example, from the V Shred homepage:




*Captured January 3, 2023*[2]

---

[1] Including [vshred.com](vshred.com) and [sculptnation.com](sculptnation.com), both operated by V Shred LLC. This also includes pages on le.vshred.com , which links from vshred.com

[2] From the Internet Archive, [https://archive.org/about/](https://archive.org/about/).

13. The same is true of the V Shred Programs Page. For example:




*Captured November 28, 2022*

14. V-Shred also sells Product "bundles." Consumers can buy bundles by taking a quiz linked from V Shred's homepage. Based on the quiz results, consumers are then forced to watch an advertisement video (there is no way to move forward without watching the entire video, i.e. nothing in the video can be skipped). The video hypes purported substantial discounts off the regular prices, with time pressure. For example, for the Fat Loss Extreme for Him $57 bundle:










15. More advertisements follow the video. For example:



16. All of this is false – these purported deals are always available and the discount is fake.

17. V-Shred also sells supplements, via its Sculpt Nation website. Just like V Shred's diet and fitness programs, these Products seem like they are offered at a steep discount. For example:




*Captured February 2, 2023*




*Captured March 8, 2024*

18. Plaintiff's counsel investigated Defendant's historical website sales using the Internet Archive (available at www.archive.org). Plaintiff's counsel sampled a monthly archive of V Shred's homepage for the past four years (48 months). Every page showed a purported sale and strikethrough prices similar to the pages illustrated above. The Products are always "on sale" and the discounts are fake.

19. Similarly, Plaintiff's counsel investigated the Sculpt Nation homepage, using the Internet Archive. Plaintiff's counsel sampled a monthly archive of this homepage from January 2022 to today (43 months).[3] Every single page showed a purported sale and strikethrough prices similar to the pages illustrated above. The Products are always "on sale" and the discounts are fake.

20. V Shred also sells some Sculpt Nation supplements through its Amazon store. But even there, it does not sell its products at the purported regular price (full price) that it advertised on its Sculpt Nation website. Instead, on Amazon, it sells its products at or below the purported discounted price. For example, the BURN EVOLVED 2.0 supplement is listed on sculptnation.com as having a regular (former) price of $67, with a purportedly discounted price of $49:




*Captured July 16, 2025*

[3] The Internet Archives of the Sculpt Nation product pages would not load from July 2021-December 2021. But based on the consistency of the deceptive discounts from 2022 to today, Plaintiff believes the 2021 pages have similar fake discounts. Confirming information is uniquely in the possession of V Shred.

21. And on Amazon, V-Shred sells it for less than $49. The $67 strikethrough price is fake.




*Captured July 16, 2025*

22. V Shred's fake discounts are steep. For example, as shown in the screenshots above, V Shred always advertised a sale on its homepage for its "Fat Loss Extreme for Him," "Fat Loss Extreme for Her," "Move: At Home," and "Ripped in 90" Products. Each of those Products had a strikethrough regular price (the former price) of $99, and a supposed discounted price of $47. In other words, each of those Products were purportedly $52 off, or about 53% off the supposed regular price.

23. By definition, reasonable consumers expect a sale to be time limited (otherwise, it is not a sale, it is just the regular price). For all of V Shred's sales, reasonable consumers interpret Defendant's sale advertisements and strikethrough prices to mean that they will get a discount "off" of the former or regular prices that Defendant formerly and usually charges for its Products. In other words, reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's Products, before the sale began, and will again have to pay for Defendant's Products when the sale

ends. This creates a sense of value and urgency: buy now, and you will receive something worth more than you pay for; wait, and you will pay more for the same thing later.

24. Reasonable consumers also believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving discounts from those listed regular prices.

25. In truth, however, Defendant always offers steep discounts. As a result, the list prices Defendant advertises are not actually Defendant's regular, former, or prevailing prices. The purported discounts are illusory.

26. On top of its fake discounts, V Shred misleads consumers about when the sales will end. For example, for the "Fat Loss Extreme" plan, the website claims "this price will only last a few more days before it DOUBLES, so please act now…." This is a lie: the price never doubles (and V Shred knows this).




*Captured June 26, 2025*

27. To pressure sales, the checkout cart also represents that the discount is a "Special Offer" that is only available for minutes (with a countdown clock). In reality, the offer is not special and it is always available.




28. V Shred's fake sales work because reasonable consumers are not fake sale detectives. Reasonable consumers are not monitoring the website every day for months or years. And even a consumer who occasionally checks the website would reasonably believe that there happened to be another legitimate sale. As illustrated above, discovering Defendant's deception required extensive mining of internet archives.

29. Putative Class Members are still not aware of Defendant's fake sale scheme. Absent Class Members will learn of the scheme for the first time upon court-ordered class notice in this case.

30. Sales drive purchases. Consumers are more likely to buy a product—and willing to pay more—if they believe that the product is on sale and that they are getting a product with a higher market value at a substantial discount.

31. Defendant's advertisements harm consumers by inducing them to make purchases based on the false belief that they are getting a substantial discount. This artificially increases consumer demand for the Products. This, in turn, puts upward pressure on the prices that Defendant can charge. As a result, Defendant artificially sells more products and can charge an artificial price premium attributable to the fake sales. So due to the fake sales, Plaintiff and the putative Class overpaid for the Products.

**B. Plaintiff was misled and harmed by Defendant's deceptive sales.**

32. On or around April 8, 2024, while living in Los Angeles, Mr. Goldman purchased a "Fat Loss Extreme for Him $57 Bundle" of Products from V Shred's

website. The website represented that the Products were on sale when Mr. Goldman purchased them. He read and relied on the sale, which was important in driving his purchase.

33. Plaintiff would not have made his purchase, at the price he paid, if he had known that the Product was not really discounted. He also overpaid for the Product because the fake sales increased consumer demand and drove up prices.

**C. Defendant breached its contract and warranties with Mr. Goldman and the putative Class.**

34. When Mr. Goldman and other members of the putative Class purchased V Shred Products, they accepted offers that Defendant made. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

35. Defendant's website lists the regular (the market value) prices of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices and the prices paid by Mr. Goldman and the putative Class Members. These promises were also express warranties: affirmations of fact about the Products and a promise relating to the goods.

36. Mr. Goldman and other members of the putative Class performed their obligations under the contract by paying for the items they purchased.

37. Defendant breached its contract by failing to provide Mr. Goldman and other members of the putative Class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the promised discount. Defendant breached its express warranties for the same reasons.

**D. No adequate remedy at law.**

38. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the

same showings as Plaintiff's legal claims. For example, Plaintiff Goldman's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of his legal claims.

39. In addition, to obtain a full refund as damages, Plaintiff must show that the Product he bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that he would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

40. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

41. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm.

**V. Class Action Allegations.**

42. Plaintiff brings the asserted claims on behalf of the proposed Class of:

- All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more V Shred Products advertised at a discount on Defendant's websites.

43. The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely

request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

44. The proposed Class contains members so numerous that separate joinder of each member of the Class is impractical. There are at least tens or hundreds of thousands of Class Members. For example, on its website, Defendant states, "We had our first customer in 2017 and have served over 5 million customers since…"[4]

45. Class Members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

46. There are central, predominating questions of fact and law common to the proposed Class, such as:

(1) whether Defendant's sales were persistent;

(2) whether Defendant's advertised regular prices were really what it regularly charged;

(3) whether Defendant's sales were misleading to reasonable consumers;

(4) whether these sales violated consumer protection laws, breached Defendant's contract with proposed Class members, and violated its express warranties; and

(5) restitution or damages needed to compensate Plaintiff and the proposed Class.

***Typicality & Adequacy***

47. Plaintiff's claims are typical of the proposed Class. Like the proposed Class, Plaintiff purchased V Shred Products advertised by Defendant. There are no conflicts of interest between Plaintiff and the Class.

---

[4] https://vshred.com/aboutvshred?ref=reviews (last accessed July 7, 2025).

***Superiority***

48. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI. Claims.**

**Count 1:**

**Violation of California's False Advertising Law**

**(By Plaintiff and the Class)**

49. Plaintiff incorporates each and every factual allegation set forth above.

50. Plaintiff brings this cause of action on behalf of himself and members of the Class.

51. Defendant has violated sections 17500 and 17501 of the California Business and Professions Code (the False Advertising Law).

52. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class Members.

53. The prices advertised by Defendant are not Defendant's regular prices. In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is always a heavily-advertised promotion entitling consumers to a discount. For the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products and its statements about its discounts from those former prices were untrue and misleading.

54. Defendant has also violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As

explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

55. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products.

56. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy V Shred Products.

57. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

58. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

59. For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Count 2:**

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiff and the Class)**

60. Plaintiff incorporates each and every factual allegation set forth above.

61. Plaintiff brings this cause of action on behalf of himself and members of the Class.

62. As alleged in detail above, Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

63. As alleged in detail above, Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant advertises its Products as being offered at a discount off their regular prices, when in fact Defendant does not intend to sell the Products at a discount and knows that the regular prices are not truly what consumers regularly pay.

64. As alleged in detail above, Defendant violated, and continues to violate section 1770(a)(13) of the California Civil Code by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website.

65. Defendant's fake sales are likely to deceive reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that its sales were misleading.

66. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products.

67. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy V Shred Products.

68. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

69. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they

had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

70. Under California Civil Code § 1780(a)(2), Plaintiff Josh Goldman, on behalf of himself and the Class, seeks injunctive relief.

71. CLRA § 1782 NOTICE. Defendant does not have a California headquarters. On July 10, 2025, a CLRA demand letter was sent to Defendant's Las Vegas, Nevada headquarters and registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. In his initial Complaint, Plaintiff only sought injunctive relief, and did not seek damages, on his CLRA claim. But he stated that "If Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the Class will amend to seek all monetary relief allowed under the CLRA." Now, 30 days have passed and Defendant has not corrected the problem for Plaintiff and for each member of the Class. Accordingly, Plaintiff seeks all monetary and equitable relief available under the CLRA, including restitution, damages, punitive damages, and reasonable attorney fees.

72. A CLRA venue declaration is attached.

## Count 3:

## Violation of California's Unfair Competition Law

## (By Plaintiff and the Class)

73. Plaintiff incorporates each and every factual allegation set forth above.

74. Plaintiff brings this cause of action on behalf of himself and members of the Class.

75. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

76. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. Defendant also engaged in unlawful conduct under the Federal Trade Commission's regulations prohibiting false or misleading "former price comparisons." 16 C.F.R. § 233.1.

***The Deceptive Prong***

77. As alleged in detail above, Defendant's supposed regular prices and discounts were false and misleading to Plaintiff and other reasonable consumers.

78. Plaintiff relied upon Defendant's misleading representations, as detailed above.

***The Unfair Prong***

79. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the Products had a specific regular price, and that the customers were receiving discounts.

80. Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

81. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

82. Plaintiff and the Class could not have reasonably avoided this injury. As alleged in detail above, reasonable consumers are not fake discount detectives and they are vulnerable to Defendant's deceptive sales.

83. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

84. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products.

85. In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy V Shred Products.

86. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class Members.

87. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

88. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Count 4:**

**Breach of Contract**

**(By Plaintiff and the Class)**

89. Plaintiff incorporates each and every factual allegation set forth above.

90. Plaintiff brings this cause of action on behalf of himself and the Class.

91. Plaintiff and Class Members entered into contracts with V Shred when they placed orders to purchase Products on Defendant's website.

92. The contracts provided that Plaintiff and Class Members would pay V Shred for the Products ordered.

93. The contracts further required that V Shred provide Plaintiff and Class Members with Products that have a market value equal to the regular prices displayed on the website, and to provide Plaintiff and the Class Members with the discount advertised on the website. These were specific and material terms of the contract.

94. Plaintiff and Class Members paid V Shred for the Products they ordered, and satisfied all other conditions of their contracts.

95. V Shred breached the contracts with Plaintiff and Class Members by failing to provide Products that had a market value equal to the regular price displayed on its website, and by failing to provide the promised discount.

96. As a direct and proximate result of Defendant's breaches, Plaintiff and Class Members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

97. Plaintiff provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's Las Vegas, Nevada headquarters and registered agent on July 10, 2025.

98. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Count 5:**

**Breach of Express Warranty**

**(By Plaintiff and the Class)**

99. Plaintiff incorporates each and every factual allegation set forth above.

100. Plaintiff brings this cause of action on behalf of himself and the Class.

101. Defendant, as the maker, marketer, distributor, supplier, and/or seller of V Shred Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's

website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

102. This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

103. In fact, V Shred's Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

104. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's Las Vegas, Nevada headquarters and registered agent on July 10, 2025.

105. Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as promised by warranty.

106. For the breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Count 6:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the Class)**

107. Plaintiff incorporates the facts alleged above, except that Plaintiff brings this cause of action in the alternative to his Breach of Contract claim. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other Class Members are void or voidable.

108. Plaintiff brings this claim for himself and the Class.

109. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the Class to purchase V Shred Products and to pay a price premium for these Products.

110. In this way, Defendant received a direct and unjust benefit at Plaintiff's expense.

**Count 7:**

**Negligent Misrepresentation**

**(By Plaintiff and the Class)**

111. Plaintiff incorporates each and every factual allegation set forth above.

112. Plaintiff brings this cause of action on behalf of himself and members of the Class.

113. As alleged in detail above, Defendant made false representations to Plaintiff and Class Members concerning its regular prices and discounts.

114. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made. Like any company, Defendant tracks its own sales and its own transactions. It knows that its sales persist and that its advertised regular prices are not really what consumers regularly pay.

115. Defendant intended that Plaintiff and Class Members rely on these representations, and Plaintiff and Class Members read and reasonably relied on them.

116. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy V Shred Products.

117. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class Members.

118. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products had they known that the representations were false, (b) they overpaid for the Products because

the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

**<u>Count 8:</u>**

**Intentional Misrepresentation**

**(By Plaintiff and the Class)**

119. Plaintiff incorporates each and every factual allegation set forth above.

120. Plaintiff brings this cause of action on behalf of himself and members of the Class.

121. As alleged in detail above, Defendant made false representations to Plaintiff and Class Members concerning its regular prices and discounts.

122. When Defendant made these misrepresentations, it knew that they were false when they made them or acted recklessly in making the misrepresentations. It knows that its sales persist and that its advertised regular prices are not really what consumers regularly pay.

123. Defendant intended that Plaintiff and Class Members rely on these representations, and Plaintiff and Class Members read and reasonably relied on them.

124. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy V Shred Products.

125. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class Members.

126. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

## VII. Relief.

127. Plaintiff seeks the following relief for himself and the Class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class;
- Damages, statutory damages, treble damages, and punitive damages where applicable;
- Restitution;
- Rescission;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;

Any additional relief that the Court deems reasonable and just.

## **<u>Demand For Jury Trial</u>**

128. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: September 30, 2025

Respectfully submitted,

By: */s/Jonas Jacobson*

Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*